And you would probably be asking me right now, if I was objecting to the deposition, why did I show up? So I believe it's a catch-22 in this case that I relied on a statute that is very clear, indicating that a deposition may only be taken by agreement of the parties or by order of the commission. So what is our standard of review on this issue, this evidentiary ruling? What is our standard of review? I believe the evidentiary ruling itself is an abuse of discretion standard. However, I believe that when we're reviewing the taking of the deposition itself, it violates statutory construction, which the standard of review would be de novo. Well, I mean, the statute really says it has to be taken by agreement, and you agree. The statute doesn't say anything about withdrawing your agreement, how much time you have to withdraw your agreement. It doesn't say any of that stuff. So what are we construing? I believe that the evidence on the record plainly states that there was no agreement at the time of the deposition. At the time of the deposition, there was no agreement. Counsel in the deposition transcript indicates that it was taken by agreement of parties and pursuant to the rules governing practice. However, at the time of the deposition, the record reflects that there was no agreement. Whether it was previously provided or withdrawn is irrelevant in this case. At the time of the deposition, there was no agreement to take that deposition. Didn't the commission really rule that you didn't effectively withdraw it because it was too late? That is how the commission ruled. However, there is nothing in the statute indicating that there is a time limit or a reasonableness limit. And in fact, Your Honor, just last month, I had counsel – I had a deposition scheduled at 9 a.m. in the morning, 4.30 p.m. the night before. Counsel called me. He said we had to postpone the dep. I did it without question. I mean, obviously, there would be no agreement to take the deposition if I showed up and took the deposition at that time. You know, we can argue about the – So wasn't the commission exercising discretion here? I mean, there could be a situation where they would say, yeah, there's a legitimate reason to not show up for the deposition. They could say that. However, again, I would point to the statute indicating that there's no requirement for a reason. The statute simply indicates – What kind of chaos results if any attorney can just say I'm not coming the morning of a deposition and then you have to call it off? Your Honors, I think that this goes to the way that the Workers' Compensation Commission and practitioners there work. Due to the fact that there is no discovery at the Illinois Workers' Compensation Commission, there is quite a high level, I believe, of cooperation, professionalism, and this sort of situation does not happen very often, and nor would I indicate that it happens on purpose. And yet if we went with your argument, then chaos could reign. I mean, you seem to be making an argument that it's unfettered discretion to cancel a deposition, as Justice Hoffman says, even with the witness sitting there. I mean, I think any interpretation has to have some reasonableness involved. Your example, taken to its extreme, would throw the system into chaos. And your answer is going to be, so what? The statute doesn't say it? No. How much like an argument made against you when your witness is sitting there? Well, like I said, Your Honor, I did have a deposition recently canceled on me the night before the deposition, and I didn't even – Well, that's the night before. How about five minutes before? Your Honor, there is no time limitation indicated in the statute. So that's your answer to everything, right? Well, statutory construction indicates that there is no requirement or no allowance for adding requirements such as reasonableness, a time limit. Well, counsel, it would seem that in order for your argument to prevail, you would need some additional language to the statute. You're suggesting that a withdrawal of a stipulation then would negate the agreement. The statute doesn't say that. This says only upon stipulation of the parties or upon order. So where does it say, you know, unless the stipulation is withdrawn? So it seems that your position requires some additional language to the statute that isn't there or to the rule that isn't there. I would argue, Your Honor, that at the time of the deposition itself is when the statute would be interpreted. Okay. But isn't there a written stipulation that the proponent of the deposition can provide to the arbitrator? There is the stipulation. There is no written stipulation in this case. In fact, the deposition was scheduled and before the deposition took place, I indicated that I did not agree. But you had agreed before that. I may have. Oh, come on. You know whether you did or not. I simply agreed to the date, however, Your Honor, because I did not receive the medical records in this case. I did not believe that I could zealously represent my client. I don't understand why you canceled it, but I ask you a question. You had agreed to the taking of this deposition at some point in time, had you not? I agreed to scheduling the deposition, yes. Okay. So you're saying, okay. But in answer to Justice Ferris' question, you're saying a stipulation, as you understand it, only occurs when you're in the room present with the opposing counsel and at that time stipulate. I would agree. When does a stipulation in your mind become a stipulation that there's no provision for withdrawal? I believe that when you go on the record and begin making the record and the witness is sworn in and the person who is taking the deposition indicates that it is made by agreement of the parties on the record. But that would require you to be there, wouldn't it? It would. Okay. And you weren't there. Correct. Thank you. Well, let me just ask another question here. My understanding is the medical records you didn't have were just for the last three visits. Yes, that is correct. So you could have shown up and the doctor had given you the medical records and you take 15 minutes or whatever and look at them. And then if there's a problem, you come back in and state on the record, wait a minute, this changes everything. I'm not prepared for this, you know, whatever. And then the commission could exercise their discretion about whether or not the deposition should have been taken based on that record. I agree, Your Honor. That could have been one way to handle the case. So why shouldn't we just allow the commission to exercise discretion in these kinds of circumstances based on the facts of the particular case? I believe that based on the facts on this particular case, allowing the ex parte deposition to be allowed in the record denies the Respondent due process in this  And on top of which ---- Well, you know, as far as having an opportunity to cross-examine and be heard, you had that opportunity. You decided to forego that opportunity. Well, I didn't know that he would actually proceed with the debt because normally when I ask if I discuss with the opponent or if they discuss with me that I need to postpone the debt or if I don't agree with the debt, the debt does not take place. Yeah, but normally, quote, unquote, as you say, you don't usually do it the afternoon on the day, do you? No. No, I don't. And the arbitrator made an observation. He said if all subpoenaed documents had not been received, the appropriate course of action would have been to raise an objection at the deposition and at the hearing. And then they could have ruled that you could have turned around and said, I'm taking the deposition. I don't want the deposition concluded. I want it continued so that I can review these documents. I want to cross-examine at a later date. You could have done a lot of things. In fact, it just didn't turn off. It just didn't show up. And in the words of my old basketball coach, you gambled and you lost. And that happens. I agree, Your Honor. However, I did rely on a very plain statute that did indicate that the statute only requires or that a deposition must be taken only upon stipulation or upon an order. And neither of those were present. And I did believe, I do believe that I reasonably relied on that statute. And that is your argument, and you're sticking to it. But since we've spent all of your time on that, can we shift gears? What is your position on why the commission erred in finding the causal connection to the complex accident? This is a petitioner. Well, first of all, without the deposition, there is no causation opinion in this case. Let's assume that we might get around that issue. Okay. If there is no, if there is the causation opinion in the deposition, I would argue that the manifest weight of the evidence points in the opposite direction. This is a petitioner who sprained his ankle and underwent significant amount of pain management, mostly after a car accident that he sustained shortly before all of the pain management had begun. This is a petitioner who was deemed to be at MMI and could return to full duty work at the very heavy level pursuant to FCE prior to the ongoing pain management treatment. Was there any evidence that the claimant had preexisting injury problems with his ankle? Yes, there was a preexisting fibromyalgia diagnosis, which was indicated by Dr. Holmes. He was treating for this, and he was actually during the pendency of this case on Monday. The independent medical examiner indicated that the Lyrica was not effective, and that he should be weaned off of that medication. What about the medical records of the three doctors that the commission relied on? The Dr. Buvinendran, Dr. Haddad, and Dr. Holmes. Dr. Holmes. Dr. Holmes indicated that the petitioner was at MMI on multiple occasions. He indicated that he did not have an orthopedic problem, he did not have a neuropathic problem, and had returned him to work on multiple occasions at the very heavy level. Dr. Haddad had met with the petitioner once or twice. The petitioner did not even want to treat with him, so I'm not sure why the commission would lend credence to someone who the petitioner didn't even like. And Dr. Buvinendran, I would argue his... The commission didn't like? Excuse me? The commission didn't like? The petitioner. Oh. How do I know that? Well, he had testified that he wanted to undergo further treatment with Dr. Buvinendran rather than pursue treatment with Dr. Haddad. Finally, Dr. Buvinendran, I believe, had a personal stake in this case. He treated the petitioner for a long time, made a lot of money on his injections. He was injected 26 times with medication over the course of the treatment, which provided no relief. The petitioner testified that the treatment and medications provided to him either provided no relief or made him worse. So I do not believe... But the bias of the witnesses, the credibility of the witnesses, the weight given to the testimony is really within the province of the commission. It is. However, if the manifest weight of the evidence shows otherwise, you are at liberty to review the case. Let's not confuse manifest weight with the commission's ability to determine bias and prejudice. I mean, they rule on that issue. We don't substitute our judgment for their assessment of the credibility of the witnesses, do we? I agree, Your Honor. However, in this case, I believe that the manifest weight of the evidence is overwhelming and should lead to an opposite conclusion, which is the standard for manifest weight of the evidence. Am I done? Okay, thank you. Yes, you are. You'll have time to move on. Okay. Thank you. Counsel may respond. Good morning, Your Honors. May it please the Court. Richard Alexie on behalf of the Petitioner, Mr. Jeffrey Mazurkiewicz. Mr. Grigalunas, good morning. Your Honors, the question, as you have elucidated and through your questioning, is very simply stated. If you look at statutory construction, and this Court has enunciated many, many times, you take the statute as a whole. You don't insulate. You don't pick. You don't summarize. So we take the statute as a whole. And we know that there is a simple and summary theme that generally is supposed to go through the conduct of hearings, taking of evidence, and supporting evidence in a workers' compensation case. Here's what happens. What happens here is, A, we set up a deposition of the treating physician. And as all of you know, there's no duty to take the deposition of the treating doctor. In fact, under Section 16, we obtain certified records. We obtain them by subpoena. And those records are given a great deal of deference by case holding as well as the statutory enactment. So the records of Dr. Buvinendran, the records of Dr. Haddad, the records of all of the doctors who ministered to this young man are competent if they are obtained pursuant to the statutory enactment. That's number one. Number two, there was an agreement to take the deposition of Dr. Buvinendran. Now, I can't talk beyond the record, and I'm not going to do that. So I'm not going to argue that the only purpose of taking a treating doctor's deposition is to allow the respondent its fair shake to go and see if they can have a Perry Mason moment with this doctor and have him break down on the stand during rigorous cross-examination where he disavows all of the opinions that he's already codified in his records. And, again, sometimes we do that. Well, let's think about it. What would be the motivation, just hypothetically? The guy is suffering from a very serious, painful problem. A beer block is an extremely painful process. I know you've seen medical records where they describe it in horrible detail about where they put a cuff on the thigh, exsanguinate the entire rim, and then place this probe in there so they can or cannula, rather, so they can introduce medication. Nobody wants to go through that on a rim. Here's another issue. When she talks about Dr. Holmes and his records document that he posited the theory or the opinion that this man was suffering from mononeural impingement of the peroneal nerve. Subsequent to that determination by Dr. Holmes, he underwent an EMG, and, lo and behold, it confirmed Dr. Holmes' opinion that he was suffering from this nerve-related condition. We took the deposition of Dr. Konowitz so that they had ample opportunity to explore the whole cornucopia of Dr. Konowitz's vision with regard to this case, the facts, the treatment, and so on. All of that evidence went into the record. All of Buvinendra's records went into evidence. All of the treating doctor's records went into evidence. All of the respondents' examinations went into the record. So here's the question. Is the deposition of Dr. Buvinendra and the linchpin under which the arbitrator and the commission determined this man's entitlement to benefits when the arbitrator authored that decision on December 2, 2010, four years and one week ago? I submit to this court that the body of evidence is supported entirely in favor of the petitioner. They rejected Kessler's opinion as out of hand. I mean, they gave it no credence whatsoever. I'm going to assume they read the deposition of Dr. Konowitz. I'm going to assume that Dr. Konowitz, certainly arbitrator, goes to great lengths in three different spots in his decision to recite that he reviewed all of the treating medical. So does the commission have discretion to determine whether or not the taking of that deposition or the refusal to attend was reasonable? I submit they do. Number two, is the record devoid of any other substantive evidence other than the case? The answer is it's a plethora of evidence. It's disingenuous, it's disingenuous to submit to this body that in any way the respondent was biased, was prejudiced, was denied due process when you have a stack of evidence that's totally in support of the petitioner's position by some of the finest treating doctors that appear before that commission. And to say that this case should be reversed to allow counsel, based upon her statement to the arbitrator without any supporting documentation, that, oh, we tried to get the records, but we couldn't get them. And as Justice Harris points out, there were only three visits missing. We take depositions all the time where we're scrambling to get the last couple of visits because why? You don't set up a deposition on Monday and take it on Wednesday. You set up the deposition by agreement, especially we trade back and forth. Here are the dates. When can you make it? What time is convenient so that everybody can be there at the same time? You've got to pay them in advance. You've got to order a court reporter. And then lo and behold, the rabbit comes out of the hat and says, oh, stop the music. Sorry. Let your guy suffer longer. We need to delay this because, because, well, we didn't get the records. Why not? Is my client to be punished further because of lack of diligence? Again, I don't even know if it was a lack of diligence. I've never seen a subpoena. There was no representation to the arbitrator that a petition to enforce was going to be extant. There was no issue with regard to that. Bottom line, Your Honors, I believe that this record, based upon the standard of evidence, even if you choose to ignore the deposition testimony of Dr. Buvinendre. Thank you. Are there any questions? I believe there are. Thank you, Counsel. Counsel, you may reply. Just briefly, Your Honors. I did want to touch on my GEER objection as well to the deposition transcript which goes to the abuse of discretion standard. As you know, GEER is there to prevent subpoenas. I think that this deposition transcript is the exact definition of surprise medical testimony. The medical records that I did not receive the last three visits indicated a recommendation for a spinal cord simulator. Now, this recommendation was made prior to his original MMI determination by Dr. Buvinendre. So I don't know how I could have been put on notice that a spinal cord simulator would be recommended for a spinal cord simulator. Counsel, does the entire claimant's case standard fall on the propriety of Dr. Buvinendre's testimony? I believe that, yes, it does, Your Honor. I believe that Dr. Buvinendre's testimony is the only opinion contained in the medical records representing whether or not the petitioner is in favor of a finding that the petitioner's current condition of well-being is causally related to the accident, the work accident. There's no other medical records substantiating that claim. And, in fact, there is a plethora of medical records negating that claim. So I believe that the deposition transcript is certainly important in this case. Can I ask a question? Sure. Do you think it's fair to raise an argument, a rebuttal argument that you didn't raise in your direct argument? Where does he get a chance to respond to it? It's simply an argument that I made in my brief that I wish to reiterate. You made it in your brief, but do you think it's fair to raise it in an argument only in your rebuttal and not in your argument sheet when he has no opportunity to respond to it? I'm not sure. I realize it's in the brief. I'm sorry? I realize it's in the brief, but my only question is the propriety of raising it for the first time in your rebuttal argument. I believe it's just another argument that I had made in my brief that the petitioner could have addressed in his rebuttal as he knew that I argued that in my brief and would be put on notice that I would discuss that. In his rebuttal? Yes. Or in his reply. We don't have sir rebuttal here. Yes, I understand. In fact, we call it a reply brief. It's a reply. Exactly. Replying to? I misspoke, Your Honor. I meant to say during his portion of the oral argument he could have discussed the Geer arguments as he was put on notice by my brief that I might argue the same. If there are any other questions, I would request that this Court reverse the Commission's decision on all issues. Thank you, counsel, both for your arguments in this matter. This morning was taken under advisement and a written disposition.